HUBERT TAYLOR, Judge.
Appellant was convicted of robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. Appellant was sentenced to ninety-nine years in the penitentiary. Several issues are raised, but we shall confine our discussion to the illegal evidence argument.
During the course of the trial, the State put Anthony K. Brown on the stand. The State expected Brown to testify that Chandler had admitted being involved in the robbery of Mr. and Mrs. Threets. This conversation between Brown and Chandler was supposed to have occurred while the two were in a night club. On direct examination, Brown denied having heard Chandler talk about the robbery. At that point, the State asked Brown questions concerning a statement he allegedly made to police. He again insisted that Chandler had never told him anything about a robbery. The State, for the purpose of “refreshing” Brown’s memory, then showed him a statement.
In response, Brown testified that his parole officer had picked him up at work and carried him to the police station because he had been seen with Chandler. The parole officer, according to Brown, knew he had been to a night club and threatened to have his parole revoked if he did not cooperate with police. Brown further testified that the police composed the statement, inserting facts that they thought he knew. He said he did not read the statement and signed it to keep out of jail.
Brown was then taken on voir dire, during which the State asked several specific leading questions about what Chandler was supposed to have said. Brown again answered that he had never given the police any information and that he signed the statement to keep out of jail. Upon the return of the jury, this witness was excused.
Up to that point, the State’s actions do not appear to have been improper. However, after nine other witnesses had given over seventy pages of testimony, the State recalled witness Brown. The first question posed to Mr. Brown was, “Mr. Brown, did you make a statement to Mr. Perkins and Mr. Ford on April the 8th of 1982 in which you said, ‘He,’ meaning Barry Chandler, ‘then told me they had just robbed the Threets.’ ” The witness denied making that statement and also answered several other leading questions in the negative. After a cross examination, the witness was excused and the State put Officer Charles Ford on the stand. Officer Ford testified that Mr. Brown had made a statement to him in which Brown said that Chandler was carrying a large amount of cash and had admitted he was involved in the robbery.
Because of the nature of the questioning, it is obvious that Mr. Brown was recalled so that he could be impeached. The State was no longer in a position of surprise; they knew exactly how Mr. Brown would testify. It is well established that a witness may not be called in order that he might be impeached. Fontaine v. Patterson, 305 F.2d 124 (5th Cir.1962). Any other rule would allow a party to put otherwise inadmissible evidence before the jury for no purpose other than getting in the inadmissible evidence. Although a party who is surprised by his witness may interrogate the witness, he may not impeach his own witness by introducing proof of prior inconsistent statements to avoid the effect of the unexpectedly unfavorable testimony given by such witness. Patrick v. State, 43 Ala.App. 338, 190 So.2d 551, 555 (1966).
Additionally, the particular method of impeachment used by the State is *1335 improper. The rule in Alabama is that a party who has been surprised by a witness may lead or cross examine him in order (1) to refresh the recollection of the witness or (2). to show the surprise of the party who called the witness. Randolph v. State, 331 So.2d 766 (Ala.Cr.App.1976). A party cannot impeach his own witness by showing through another witness inconsistent statements by the witness sought to be impeached. Randolph, supra; Isbell v. State, 57 Ala.App. 444, 329 So.2d 133 (Ala.Cr.App.1976).
The State’s action cannot be considered harmless. In this case, the officer was allowed to testify to what amounted to a confession. Coming from a police officer, testimony about an incriminating admission would weigh heavily on the minds of the jury. In light of the fact that the victims could not identify Chandler as being a participant in the robbery, the error caused Chandler substantial injury and the judgment of the lower court is due to be reversed.
Although we are not specifically addressing Chandler’s other issues, it seems appropriate for us to make a few comments on the issue of the admissibility of Chandler’s confession. A summary of the facts concerning the confession are set out below.
Chandler was incarcerated in the State of Florida. Police from Alabama went to Florida to interview him about the robbery. The Alabama officers were given the use of an interview room at the jail where Chandler was incarcerated. They waited in the room while a Florida officer was sent to escort Chandler from his cell to the interview room.
The Florida officer now claims that, either while in the elevator or just prior to turning him over to the Alabama police for their interview, he gave Chandler the Miranda warnings from memory, whereupon Chandler gave a complete oral confession indicating his involvement in the robbery. Chandler was then turned over to the Alabama police. During the interview, Chandler made a signed written statement denying any involvement in the robbery. The Florida officer was present during part, if not all, of the interview. After the written statement was prepared, the Florida officer signed it as a witness.
At no time while the Alabama officials were in Florida did the local officer tell them Chandler had given him a confession. This officer did not tell anyone of the confession until almost six months later, possibly when the need for one became apparent. Not all of these facts were brought out on voir dire during the original trial and undoubtedly the trial judge made the right decision at that time. During the course of any further proceedings on the admissibility of this confession, however, it is suggested that all parties involved thoroughly scrutinize the available facts, keeping in mind that the standard for admissibility is that the confession must be voluntary.
The judgment of the lower court is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.